THE PEOPLE *vs.* LOTT, sheriff, &c.

Where, in a case arising since the act of May 7, 1844, for the establishment and regulation of the police in the city of New York, a recognizance given for the appearance of a party to answer to a criminal charge before the court of sessions, on being forfeited, is *filed* by the district attorney, with a certified copy of *the order of the court*, forfeiting the same, in the office of the county clerk, and the clerk dockets the same in the book of judgments kept by him, this becomes a judgment of the court of *common pleas*, and may be described as such.

Such judgment is a lien on real estate, from the time of filing the recognizance and copy order, and docketing the same, and execution may be issued, in the same form as on a judgment recovered in the court of common pleas in an action of debt.

And on filing a transcript of such judgment in the clerk's office of any other county, in which the defendant has property, execution may be issued by the clerk, to the sheriff of that county.

The People *v.* Lott.

In an action against the sheriff for not returning such execution, where it appears that the defendant in the execution had sufficient real estate in the county to satisfy the same, the measure of damages is the amount directed to be levied, by the execution.

APPEAL by the defendant from a judgment entered at a special term. The action was brought against the defendant as sheriff of the county of Kings, for not returning an execution issued against Hodges and Hart, for $1000 and costs. On the 1st of May, 1852, Hodges as surety and Hart as principal, entered into a recognizance for the appearance of Hart at the court of sessions in the city of New York. Hart failed to appear, and the recognizance was, by an order of that court, declared to be forfeited, and it, together with a certified copy of the order, was filed in the office of the clerk of the city and county of New York, in October, 1852, and was duly docketed by the clerk in the book for docketing judgments. In November, 1852, a transcript of the judgment was filed in the office of the clerk of the county of Kings, and in January, 1853, an execution was delivered to the defendant as sheriff; who failed to return the same. Hodges lived in Kings county, and had no personal estate, but had real estate there, worth several thousand dollars. The complaint alleged that the judgment was recovered in the court of common pleas of the city and county of New York. The defendant, by his answer, denied all the allegations in the complaint. On the trial, the defendant's counsel objected to proof of the above facts, on the ground that the same did not sustain the complaint. The court overruled the objection, and received the evidence, and the defendant's counsel excepted. As a conclusion of law upon the facts, the court found and decided that the plaintiffs were entitled to recover of the defendant the amount of said judgment, with interest, amounting to $1157.50, and judgment was entered for that sum.

*J. L. Campbell*, for the appellant. Did the evidence show a judgment of the common pleas? A judgment is a final decision of a court in some action or proceeding theretofore pend-

ing before it.   It may be rendered *ex parte*, but in  every  case a hearing is pre-supposed—may be had, and is had, unless one party by his non-appearance abandons his claim or defense. The court of common pleas never had Hodges before them; there does not appear ever to have been any suit or  proceeding against him in that court, or even that he was within their  jurisdiction between the time of the signature of the recognizance and the trial of this action, and clearly, there could not be a judgment in either the ordinary legal or popular signification of the term, against him, rendered there.   Unless such proceedings have been expressly declared by the legislature  to constitute a judgment of the common pleas, it is clear they do not.   Such an intention is not lightly to  be  inferred.   It is a matter of some importance that legal expressions should be capable of definition, and should not have new meanings arbitrarily attributed to them.   The act of 1844, ch. 315, art. 4, § 8, provides for the estreating recognizances for the appearance of accused persons by the court of sessions in the city of New York, and for the filing a certified copy of such order and the recognizance with the clerk of the city and county of New York ; and that the clerk shall docket the same, in the book of judgments docketed on transcripts ; that the recognizance and a certified copy order of forfeiture shall be the judgment record, that the judgment shall be a lien on real estate from the time of the filing, &c., and that execution may be issued thereon in the same manner as upon a judgment recorded in the court of common pleas.   The tenth section provides for the usual fees to the clerk for his services.   These provisions clearly do not make the judgment (if there be any thing properly so called,) a judgment of the common pleas in express terms, but on the contrary, strongly show a different intention on the part of the legislature.   A judgment under them is in fact rendered by the court of sessions, which has the parties before it, pronounces the recognizance forfeited, makes the order to that effect, and upon the action of which every thing depends.   No judicial officer of the court of common pleas has any thing to do with the proceedings in any stage, or any power over them.

The People *v.* Lott.

The provision that execution is to be issued in the same form as upon a judgment of the common pleas, shows clearly that the judgment is one of the court of sessions, in law as well as fact. The execution is to be in form as on a judgment of the common pleas, and in that respect such a judgment is similar to one of the common pleas. Form is not substance, nor similarity identity. The provision in the succeeding section, for the fees of the clerk of the county, confirms this. If there was to be a judgment of the common pleas, the clerk would, under the existing laws, have been entitled to his fees; and the necessity of a provision in his favor grows entirely out of the fact that there is no such judgment contemplated. The law of 1845, ch. 229, gives the control and jurisdiction over such judgments to the court of common pleas as if docketed in that court. If such judgments are judgments of the common pleas, then this act was clearly superfluous. If this was a judgment of the court of common sessions, or any thing but a judgment of the common pleas, then clearly the evidence of it was erroneously admitted as being, 1. No evidence of any cause of action against the defendant. 2. As being an entirely different cause of action from that alleged in the complaint. The plaintiff's attorney seems to have been fully sensible that unless he could make out a judgment in the common pleas, he could not sustain this action, and has averred such judgment, though he must have been aware that none such ever was, in fact, rendered. The court of general sessions of the city of New York is a court of limited and local jurisdiction only, having no power or jurisdiction out of the city and county of New York, nor having, except as provided by the act of 1841, any authority to render a judgment which can become a lien upon property. That act was, doubtless, passed in view of the difficulty of enforcing recognizances in so fluctuating and large a population as that city contains, and in which, from the general occupation of its inhabitants in mercantile pursuits, it is almost impossible to ascertain whether an individual presenting himself as bail is solvent, and the risk of change in his circumstances, and the facility with which property may practically be put out of the reach of

creditors is notorious. These matters are local; no such difficulties exist to any thing like a similar extent in the rest of the state, and the remedy is not extended to recognizances taken elsewhere. There is no reason to suppose that it was intended to operate upon persons or property beyond the jurisdiction of the court whose powers were thus singularly enlarged. It would create a fertile source of embarrassment and uncertainty in respect to the titles of real estate if the purchaser of property in Buffalo or Ogdensburgh were bound, in addition to his usual searches, to ascertain whether some such proceeding as this had not been had against his grantor, in the city of New York, and would be entirely at variance with the provisions of our laws, which require the docketing of a judgment in the county where land is situate, before it becomes a lien on such property. According to the true and proper construction of the act of 1841, in a case under it, the court of sessions renders the judgment, a certified copy of the order is filed in the office of the clerk of the county, and the order is docketed (as if it were a transcript, not with any other force or effect) in the book of dockets of judgments of which transcripts are filed with such clerk, (not in the book of judgments of the court of common pleas,) and that such judgment shall thereby become a lien on the real estate (in the city of New York only, of course,) of the parties against whom it is entered, and execution to be issued upon it on the same form as if it were a judgment of the common pleas.

Any construction extending the lien beyond property so situate, is liable, 1. To the objection that the evil to be redressed, and the statute itself, being purely local, the remedy is not to be extended beyond what is plainly necessary for its redress. 2. That such extension would be against the plain policy of the law in relation to incumbrances on real estate and productive of great injustice and injury. 3. The statute does not, as has been inaccurately said, restore the common law. By very ancient English statute, so old that it is not within what is called time of legal memory, a recognizance was a lien upon real estate, being a debt of record, but no execution, authorizing a

The People *v.* Lott.

sale of land by the sheriff, could be issued upon it. Nor does the idea of a lien import that, without further proceeding, it may be enforced by execution. The sale of land upon execution is unknown to the common law.

This statute has been expressly repealed in this state, and the act of 1844 does not in any way restore it. That act does not provide that the recognizance shall be of itself a lien as formerly, but only that a lien may be created by the proceedings therein authorized upon one. If it provides for a lien upon land situate out of the city, it gives no means of enforcing it, and in such case the only mode is by an action for a foreclosure. The filing the transcript in Kings county was clearly entirely immaterial; as 1st, this was not a judgment of any court of which a transcript could be filed with any legal effect, but a judgment of the court of sessions only. 2d. The original judgment being a judgment of the court of sessions, something in the nature of a transcript of which was filed in the office of the county clerk of New York, the transcript of it filed in the office of the clerk of the county of Kings being a transcript from such transcript, could not be filed in any county. There is no authority for filing a transcript of a transcript of a judgment so as to make a lien on lands, and such an act is void and without legal effect. This view was taken by Morse, justice, who on the 16th June, 1850, upon argument, ordered two transcripts filed in the office of the clerk of Kings county, upon recognizances entered into by Rem. R. Hegeman, in the city of New York, to be stricken from the record. The expression of Judge Edmonds, in *The People* v. *Gildersleeve,* as to the intention of the legislature, quoted by the respondent's counsel, is a mere *obiter dictum.* The point whether there was a judgment in the common pleas, was not adverted to in that case, and it was the interest of the appellant's counsel to keep it out of view, as otherwise the appeal must have failed on that ground. Besides, such an intention must be expressed, and should not be inferred.

But even if the plaintiffs were entitled to recover, the rule of damages adopted is erroneous. It is true that a sheriff who

has neglected his duty in levying an execution cannot show that a debtor is still solvent. But this is entirely a different case ; enough appears to show that this is not a case of willful dereliction of duty, but that his error, if any, consists solely in an erroneous view of a difficult and entirely novel question of law, and the evidence goes much further than any case heretofore decided, as it shows that Hodges was not merely solvent, which is a matter of difficult ascertainment and might be liable to change ; but that the judgment is now (if ever it was his duty to act in its enforcement) a legal lien upon landed property more than sufficient for its satisfaction. The damages in such a case are clearly nominal, as the whole amount might and could be collected under a new execution. If the sheriff should refuse to act under that, notwithstanding an unfavorable decision in this case, redress might be obtained in a summary way by the imposition of a fine or a second action, but it is hardly deemed necessary to discuss this question at length in the present case.

*J. Oakey Hall,* (district attorney,) for the people. I. The first objection in the argument submitted by the counsel for the defendant is purely technical, for it must be conceded upon his own statement, that if the judgment mentioned in the complaint was not in form strictly a judgment of the court of common pleas, still such was its effect. There is no pretense that the defendant was misled by the alleged variance, and if the court should deem it material that the particular manner in which the judgment was recovered, should be set forth, they now have ample power to order an amendment, and conform the pleading to the proofs ; the defendant has not been prejudiced. (*Code,* §§ 170 *to* 173.)

II. This was a judgment of the court of common pleas, and was properly described. (1.) The character and nature of judgments perfected under the section in question, has been fully reviewed and settled by this court. (*Gildersleeve* v. *The People,* 10 *Barb.* 35.) In the case cited, Justice Edwards, on page 44, says, " The legislature have not expressly declared that such

a judgment shall be a judgment of the court of common pleas, *although it would seem that such was their intention*—for after requiring the judgment to be docketed with the county clerk, they provide that an execution may be issued to collect the amount of the recognizance *in the same form as upon a judgment in the court of common pleas.*" This opinion was expressed in a case which arose on the 21st of February, 1845, before the act of that year (*Laws of* 1845, *p.* 250) was passed. This last act seems to remove all doubt which prior thereto might have existed. (2.) The statute requires the district attorney to file the recognizance, and the certified copy of the order forfeiting the same, in the office of the clerk of the city and county, and these when so filed, *become the judgment record.* In 1844 the clerk of the city and county was not clerk of any court except the court of common pleas. The court of sessions 'had no power or control over the recognizance after it was ordered to be forfeited; the power to discharge the recognizance after forfeiture was vested in the court of common pleas by the revised statutes. (2 *R. S. p.* 485, § 37.) This power and jurisdiction of the court of common pleas originated in 1818, (*Laws, p.* 307,) and had, prior to that time, been vested in the court of exchequer. (1 *Laws of* 1813, *p.* 401.) Until the revision of the statutes it was always requisite to send the estreated recognizance to the court of exchequer, or to the court of common pleas to be enforced, (*Laws of* 1813, *p.* 400, § 6,) and process to collect the judgments upon estreated recognizances was issued out of those courts. (§§ 1, 2, 4 *et seq. of the same act.*) The revised statutes, (2 *R. S.* 485, § 29,) so far changed the previous law as to require, " whenever any recognizance to the people of this state shall have become forfeited, the district attorney of the county in which such recognizance was taken shall prosecute the same by action of debt for the penalty thereof," &c. The act of 1844 was intended to, and did, restore in the city and county of New York the mode of collecting estreated recognizances which existed prior to the revised statutes, and to carry out this intent, in addition to prescribing the mode in which the judgment should be perfected, it provided that the

*execution* must be "in the *same form* as upon a judgment re-
covered in 'the court of common pleas in an action *of debt.*"
This form was well settled when the act was passed; the exe-
cution to be in the *form* prescribed, must describe the judgment
as rendered in the court of common pleas, must be returnable
before the judges of that court, tested in the name of the first
judge, and sealed with the seal of the court. In addition to this,
we have the legislature providing in substance, in 1845, that
when the record was filed, no distinction was to be maintained
between the judgment so perfected and those commenced by
service of process. (3.) The counsel for the defendant falls into
an error upon the whole question involved in this case, by over-
looking the nature of the instrument upon which this judgment
was rendered; he suggests that "the court of common pleas
never had Hodges before them, and that by reason thereof there
could not be a judgment against him, either in the legal or pop-
ular signification of the term." The same view of this question
was pressed by counsel in the case of *Gildersleeve* v. *The Peo-
ple,* (10 *Barb.* 35,) and Justice Edwards disposes of it at page
43 as follows: "It was not necessary to bring an action upon
the judgment, for there was nothing to be tried. The recogni-
zance was an acknowledgment of record that a debt was due,
and was, in its legal effect, a confession of judgment. Hodges
was bound to know when he acknowledged the recognizance that
he was entering into a contract *sui generis,* being known as a
'contract of record,' and also the summary remedy by which
the judgment would, in case of default, be perfected thereon,
and that he then and there subjected himself to the jurisdiction
and control of the court of common pleas." (*Edwards, J.,* 10
*Barb. p.* 40.) It will be observed that in *Gildersleeve* v. *The
People,* the case came before the court on a writ of error to the
court of common pleas, and the judgment must necessarily have
been considered by the learned counsel for the people and for
the defendant, Gildersleeve, as well as by the court, to be a
judgment of the common pleas *rendered in a summary manner.*
(4.) If the judgments perfected under the acts of 1844 and '45
are not judgments of the court of common pleas, but are, as con-

The People *v.* Lott.

tended by the counsel for the defendant, judgments of the court of sessions, we have presented an anomaly in judicial proceedings. It would then present the case of a court rendering judgment, and yet having no control over the judgment or the officers, or process or means, whereby that judgment is to be enforced, and rendered effectual; and further, that jurisdiction and control would be vested in another court, in a mode for which no precedent can be found. Courts of sessions, from the time of their first organization, never had power to do more than to estreat the recognizance, leaving it to the civil courts and officers to perfect and enforce the remedies.

III. The force and effect of the judgment is not limited to the city and county of New York. If this was so, then, although the magistrate would have no right to refuse bail, who possessed sufficient property without the county, yet the people would be without a remedy upon the recognizance. The act of 1844 is imperative as to the manner in which the judgment must be perfected, and it can only be done as therein prescribed. The provisions in regard to the judgment being a lien upon the real estate of the cognizor, must be taken in connection with the change which was made in the lien of judgments, and right to issue executions thereon, by the courts of common pleas, to different counties where the judgment was docketed, pursuant to §§ 25, 29, 30 and 34, of the act of May 14, 1840. (*Laws of 1840, p.* 334.) Nor was the docket of the judgment in Kings county made from a " transcript of a transcript," but the transcript was issued by the clerk, with whom the judgment record was filed, in the same manner in which a transcript would have been issued by him of a judgment in the supreme court, where the record had been filed in his office, since the code. It was a transcript from the original docket, as made from the original record in his office.

IV. The court adopted the correct rule of damages. In *Ledyard* v. *Jones*, (3 *Selden*, 550,) the court of appeals held that in an action against the sheriff for neglecting to return an execution, *prima facie*, the measure of damages is the amount to be raised by the execution, and that, while the sheriff might show

in mitigation of damages, that the defendant in the execution had no property upon which he could have levied, *he could not show that the judgment is still collectable.* The court also overrule the case of *Stevens* v. *Rowe,* (3 *Denio,* 327,) holding a contrary doctrine.

*By the Court,* MITCHELL, P. J. The complaint describes the judgment as recovered in the court of common pleas. If that were a variance it is one that could not mislead, and should be disregarded. It is not a variance. There are two distinct things which are known as recognizances; one, the written acknowledgment of liability signed by the party, or contained in the minutes of the court, as entered by the clerk; the other, the formal record of this acknowledgment duly *filed* in court, and made up by an officer of the court from the acknowledgment. The last is the record, which imports absolute verity. There is no principle of law which makes it essential that the record should be made up in the same court in which or for which the acknowledgment was taken; although it would be most congruous to make it up in that court if that court had jurisdiction of actions on such acknowledgments. Bail for the appearance of a defendant, even in a civil action, might be taken in one court and the legislature might direct the record against the obligors, founded on the bail piece alone, to be entered in some other court. The judgment would then be the judgment of such other court, although founded on a proceeding commenced in the first court.

Courts of sessions have never had jurisdiction to entertain actions to collect money due on forfeited recognizances; and it is not to be inferred that such jurisdiction is intended to be given to them, unless there be a clear expression of legislative intent to that effect.

Under the laws of 1813, forfeitures, whether on recognizances or otherwise, were collected by the court of exchequer, presided over by one of the puisne judges of the supreme court. (1 *R. L. of* 1813, *p.* 400.) The clerks of the various courts of record delivered to that court, on the 1st day of October

The People *v.* Lott.

term in each year, an account and estreat of all recognizances forfeited prior to the month of September of that year, (*Id.* 402, § 6,) and the court of exchequer issued execution, founded on the return, against the body, lands and goods of the defendant, to be levied by any sheriff, "of the lands and tenements in his county whereof such defendant was seised *on the day such sum of money became due,* specifying the same in such execution, or at any time afterwards, in whose hands soever the same may be." Thus the recognizance, when the mere account of it was delivered to the court of exchequer, became the judgment of that court, (unless for some reason it saw fit to remit the fine,) and execution issued on it, which bound the lands of the defendant from the time the recognizance became due, although they might have passed into the hands of purchasers, and in whatever county they were situated. The acknowledgment of the recognizance was taken in a court of sessions or of oyer and terminer, or a fine was imposed by those courts or other courts of record, but the collection of the fine was not effected by any of those courts, but only by the court of exchequer.

In 1830 the revised statutes altered the law, and declared that a recognizance should not bind any lands, but should be only evidence of a debt, (2 *R. S.* 362, §§ 23, 21,) and in pursuance of the same policy directed that whenever a recognizance to the people should become forfeited, it should be prosecuted by the district attorney, in an action of debt, for the penalty, and that on the breach of the condition being proved or confessed, or found by default, judgment should be absolute for the penalty, and execution should be awarded and executed in the same manner as upon judgments in personal actions, and with the like effect in all respects ; and that when any recognizance was to be estreated, the estreat should be made by the entry of an order directing it to be prosecuted. (*Id.* 485, §§ 29, 30, 31.) Power was also given to the court of common pleas of the county in which the court sat when the recognizance was taken, to remit the forfeiture or discharge it upon such terms as might be just and equitable, with restrictions on this power, in certain cases. (*Id.* 486, §§ 37, 38.)

The actions thus required to be brought on recognizances were not brought in the court where the recognizance was taken, but in courts having civil jurisdiction. Thus stood the law, until 1844, when it was found necessary to establish a new police system for this city, and to save the city from the large amount of costs to which it was subjected by the prosecutions of recognizances, when nothing was collected from the defendants. The old and summary proceeding was accordingly restored, so far as regarded recognizances in criminal cases in this city; and it was declared that all recognizances given to answer to a charge preferred before courts of criminal jurisdiction, on *being forfeited*, should be *filed* by the district attorney, with a certified copy of the order of the court, forfeiting the same, in the office of the clerk of the city and county of New York, and thereupon the clerk should docket the same in the book kept by him for docketing judgments, (transcripts whereof are filed with him as such clerk,) as if the same was the transcript of a judgment record for the amount of the penalty; " and that the recognizance and the certified copy of the order forfeiting the recognizance shall be the judgment record," and that such judgment should be a lien on the real estate of the persons entering into the recognizance, from the time of *filing* the recognizance and a copy of the order and *docketing* the same; and that an execution might be issued to collect the amount of the recognizance, in the *same form* as upon a *judgment* recovered in the court of common pleas of said city and county, in an *action of debt* in favor of the people, against the persons entering into such recognizance. The fees of the clerk were to be the usual fees for filing papers and entering rules; and the district attorney was to receive no compensation for his services in the matter, " his salary being deemed compensation for all such services." (*Laws of* 1844, *ch.* 315, *p.* 475, 6.)

Afterwards, in 1845, (*Laws of* 1845, *p.* 250,) it was declared that these judgments should be subject to the jurisdiction and control of the court of common pleas for the city and county of New York, in the same manner as if such judgments had been docketed in that court.

The People *v.* Lott.

Some of these provisions were quite unnecessary, if the person drafting these two laws had concluded that the judgments were in fact the judgments of the common pleas, and that this would appear to others clearly to be so.   They may have been added to prevent any doubt as to the powers expressly conferred by them.   By the express words of the law "the recognizance and the certified copy of the order forfeiting the recognizance shall be the *judgment record*, and such judgment is to be a lien on real estate from the time of filing the recognizance and copy order and docketing the same," and execution is to issue in the same form as on a judgment recovered in the court of common pleas in an action of *debt*.   It is not the recognizance and the original order which constitute the judgment record; but the recognizance and the *copy order*.   So it is not a judgment of the sessions, but it becomes a judgment when the two papers are filed with the clerk of the county; who then was clerk of the common pleas and of no other court.   It could not be the judgment of the sessions, as that court had no jurisdiction, at any time, to entertain such actions.   If not of the sessions it must be of the common pleas; for to that court alone was any control over the judgment given.

There was a reason for some of the expressions used in the act, perfectly consistent with the idea of the judgment being the judgment of the common pleas.   *No action* was commenced in that court, as the foundation of the judgment, and no judgment was *recovered* in that court in an action; but the defendant came into the criminal court and there made the acknowledgment of record, which, on his default in that court, made him liable to an action or to an immediate judgment in any court, as the legislature should direct.   For this reason the expression is used "as upon a judgment *recovered* in the court of common pleas in an *action* of debt."   Is it not a necessary conclusion that when certain papers are directed to be filed with an officer who is the clerk of a court and declared then to be a judgment, and that court has jurisdiction of such actions and the court from which they come has not, and that court has

the jurisdiction and control over such judgment in the same manner as if such judgment had been docketed in it, and no other court has that jurisdiction or control over the judgment; and execution is to issue to collect the amount of such judgment, in the same manner as upon a judgment recovered in that court in an action of debt, that the law has in effect declared the judgment to be the judgment of that court? Are not all the attributes of a judgment of that court given to it; and if so, can it be less than a judgment of such court?

But if this were not strictly a judgment of that court, it would not avail the defendant. By the act of 1840, (*Laws of 1840, p.* 334, 5,) the judgment of any court of common pleas might be docketed (in the same manner as a judgment of the supreme court) in any other county than that in which the judgment was rendered, with the like effect as judgments in the supreme court, and execution could be issued to the sheriff of any county where the judgment was docketed, with like effect as if issued to the sheriff of the county where the court was held. The docket of the judgment thus was made to affect lands in any county where the docket was entered, and the execution to such county required the sheriff to sell the title of the judgment debtor in any lands, from the time of such docket. The law in question directs the execution on the judgment entered upon the recognizance to be issued "in the same form as upon a judgment recovered in the court of common pleas." If the execution, as required, adopts the form of an execution on a judgment in the common pleas, it must direct the sheriff to sell the title of the defendant to any lands held by him when the judgment was docketed in his county. This the sheriff has failed to do, and is therefore liable for his default.

The law of 1844 was not intended in any way to curtail the force or effect of a judgment obtained in the short way prescribed by it, but to save expense, and obtain the same objects as before, in a summary method. A judgment on recognizance, in the old method, could issue to any county, (after the act of 1840,) and be a lien on the lands of the defendant; one un-

der the act of 1844 must be allowed to have the same effect, to carry out the intention of the law.

The rule of damages was that prescribed in *Ledyard* v. *Jones*, (3 *Seld.* 550,) and was correct.

The judgment must be affirmed, with costs.

[New York General Term, November 5, 1855.   *Mitchell, Clerke, Roosevelt* and *Cowles*, Justices.]