THE PEOPLE OF THE STATE OF NEW YORK *against* PETER J. HICKEY AND ANOTHER.

SAME *against* DAVID O'BRIEN AND ANOTHER.

SAME *against* THOMAS C. FIELDS AND OTHERS.

SAME *against* MONAGHAN AND ANOTHER.

SAME *against* MILLER AND ANOTHER.

SAME *against* WILLIAM J. FLORENCE AND ANOTHER.

SAME *against* MICHAEL J. QUIGG AND ANOTHER.

In the city and county of New York judgment against the surety on a recognizance to appear for trial under a criminal indictment, may be entered by filing with the county clerk the recognizance, and a copy of the order of the court forfeiting it.

Such a judgment is one entered on "due process of law," and is not an infringement on the constitutional right of trial by jury, under the Constitution of the United States or of this State.

The act of 1855 (L. 1855, c. 202) did not change the method of proceeding in such cases in the city and county of New York, but only gave to the people a remedy on the recognizance by action of debt in addition.

The act of 1861 (L. 1861, c. 333), in regard to entering judgment on forfeited recognizances, is not a private or local act, and it is, therefore, not requisite that its subject should be expressed in the title.

A clause added to the recognizance, by which the principal and surety consent that judgment may be entered against them by filing with the county clerk the recognizance, and a copy of the order of the court forfeiting it, is mere surplusage, and has no effect on the validity of the recognizance.

APPEALS from orders of this court denying motions to vacate judgments in the above-entitled actions.

The judgments had been entered on forfeited recognizances, and the judgment rolls in all the cases were substantially as

follows: (The consent to the entry of judgment annexed to the recognizance was contained, however, in only two of the rolls).

*(Recognizance.)*

" STATE OF NEW YORK,  }
*City and County of New York,* }  ss.:

Be it remembered, that on the twenty-fifth day of June, in the year of our Lord 1873, John J. Walsh, principal, of No. 324 Fifth street, in the city of New York, and Peter J. Hickey, surety, of No. 167 East 33d street, in said city, personally came before the undersigned, justice of the Supreme Court of the State of New York, and acknowledged themselves to owe to the people of the State of New York, that is to say, the said John J. Walsh, principal, in the sum of one thousand dollars, and the said Peter J. Hickey, surety, in the sum of one thousand dollars, separately, of good and lawful money of the United States of America, to be levied and made of their respective goods and chattels, lands, and tenements, to the use of said people, if default shall be made in the condition following, viz.:

Whereas, the said John J. Walsh was, on the sixteenth day of June, 1873, duly indicted in the Court of Oyer and Terminer in and for the city and county of New York, for the offense of conspiracy:

Now, therefore, the condition of this recognizance is such, that if the above-named John J. Walsh, principal, shall personally appear at the present term of the Court of Oyer and Terminer, held in and for said city and county of New York, to answer to said indictment against him, and abide the order of the said court thereon, and also, in like manner, personally appear at any subsequent term of said court, to which the proceedings in the premises may be continued, or to any court where said indictment may be sent for trial, if not previously surrendered or discharged, and so from term to term until the final decree, sentence, or order of the court thereon, and abide such final sentence, order, or decree of the court thereon, and

not depart without leave, then this recognizance to be void, otherwise to be and abide in full force, power, and virtue.

JOHN J. WALSH,
*Principal.*
PETER J. HICKEY,
*Surety.*

Taken and acknowledged before me, }
  the day and year first aforesaid.  }

NOAH DAVIS,
*J. S. C.*

And we, the undersigned, principal and surety in the annexed recognizance, do hereby stipulate, agree, and consent, that in case said recognizance shall be forfeited, that a copy of the order of the court forfeiting the same, together with this recognizance, be filed in the office of the clerk of the city and county of New York, and that judgment may be entered for the several sums set forth in said recognizance, and that execution issue forthwith thereon according to law.

*Witness,*

  CHAS. E. MARSAC.

JOHN J. WALSH,
*Principal.*
PETER J. HICKEY,
*Surety.*

Endorsed.

  Filed 25th day of June, 1873.

  Bond approved as to form and sufficiency.

HENRY C. ALLEN,
*For Dist. Attorney.*

(*Order of forfeiture*).

At a Court of Oyer and Terminer, holden in and for the city and county of New York, at the City Hall of the said city, on Monday, the 22d day of December, in the year of our Lord one thousand eight hundred and seventy-three.

The People of the State of New York v. Hickey.

*Present*—The Honorable CHARLES DANIELS,
*Justice of the Supreme Court of the State
of New York.
Justice of the Oyer and Terminer.*

THE PEOPLE OF THE STATE OF NEW
   YORK
            *vs.*
JOHN J. WALSH.

*On Indictment for
Conspiracy.*

The defendant not appearing, and Peter J. Hickey, his surety, not bringing him forth to answer to this indictment, pursuant to the condition of their recognizance, on motion of the district attorney, it is ordered by the court that the said recognizance be and the same is hereby forfeited. And it is further ordered that the said recognizance, together with a certified copy of this order, be filed in the office of the clerk of the city and county of New York, and that judgment be entered thereon, according to law, against the said John J. Walsh, the defendant above named, and the said Peter J. Hickey, his surety, for the several sums set forth in the said recognizance.

A true extract from the minutes."

J. SPARKS, *Clerk.*

Endorsed.

Filed 24th day of December, 1873.

Two hours and thirty minutes."

An application was made to the court at special term to set aside these judgments, on the ground that they were void. The motion was denied, and this appeal was taken.

*John C. Shaw*, for appellants.

I. These judgments are judgments of the Court of Common Pleas, and this court has ample power and authority to set them aside (L. 1844, c. 315, § 8; L. 1845, c. 229; L. 1854, c. 198; *People* v. *Gildersleeve*, 10 Barb. 44; *People* v. *Lott*, 21 Id. 130; *People* v. *Petry*, 2 Hilt. 523; see also History and Jurisdiction of the Court of Common Pleas, by Chief Justice

Daly, 1 E. D. Smith's R.) II. The provisions of the Laws of 1844 are repealed by implication by sec. 29, art. 2, title 6, chap. 8, part 3, of the Revised Statutes (Edm. ed. p. 507, vol. 2), which provides as follows: " Whenever any recognizance to the people of this State shall be forfeited, the district attorney of the county in which such recognizance was taken shall prosecute the same by action of debt for the penalty thereof, and the proceedings and pleadings therein shall be the same in all respects as in personal actions for the recovery of any debt." III. Section 471 of the code declares that the code shall not apply to the foregoing section of the Revised Statutes as to forfeited recognizances, but by L. 1855, c. 202, p. 305, it is enacted as follows: Sec. 1. That all the provisions of the code are to apply to all recognizances forfeited in any Court of General Sessions and of Oyer and Terminer. Sec. 2. All laws or parts of laws or provisions of statutes in anywise conflicting with such application of the provisions of the code to said forfeited recognizances, are repealed. IV. The second section of this act clearly repeals the act of 1844 by its very terms, and the judgment entered herein is absolutely void, except it is saved by the act of 1861 (L. 1861, c. 333). V. The act of April 25, 1861, declaring section 8 of the act of 1844 to be in force, is equivalent to a re-enactment of that act as of April 25, 1861. Section 8 of the act of 1844 is clearly unconstitutional; it is in violation of sec. 16 of art. 3 of the Constitution, which declares that " no private or local bill shall embrace more than one subject, and that shall be expressed in the title." The act of 1844 is clearly a local act in all its parts, and also clearly embraces more than one subject. The title of the act does not indicate any intent to provide for the entry of judgments on forfeited recognizances (*Huber* v. *People*, 44 How. Pr. 375). VI. The act of 1861 is also clearly unconstitutional, as being in violation of the same section (*People* v. *Supervisors of Chautauqua Co.* 43 N. Y. 10, 13, 22, 23; *Glaskin* v. *Meek*, 42 N. Y. 196). VII. The act is in contravention of the fifteenth amendment of the Constitution of the United States, which provides, "nor shall any State deprive any person of life, liberty, or property, without due process of law" (Amendments to United States Constitution,

adopted June 16, 1866, art. 14, § 1). (*a*) The original article (art. 5) of the Amendments formerly read exactly as our present State Constitution does, and it was accordingly held that this was only a limitation upon laws of the United States, but the amendment now limits the States, irrespective of their own State Constitutions. (*b*) What then is due process of law? Due process of law means, in short, trial by jury (*Deer* v. *Hoboken*, 18 How. 272; *Matter of Jones*, 30 Id. 446; *Taylor* v. *Porter*, 4 Hill, 140; *People* v. *Haws*, 37 Barb. 440; *Van Horne* v. *Dorrance*, 2 Dall. 304; *Embury* v. *Connor*, 3 N. Y. 511; *Wynhamer* v. *People*, 13 N. Y. 378). So far as the United States Constitution is concerned, it contains its own interpretation of due process of law. (1) In suits at common law, where the value in controversy shall exceed $20, the right of trial by jury shall be preserved (art. 7, of the amendments). (2) The common law alluded to is the common law of England (*United States* v. *Wenson*, 1 Dall. 20). (3) The term "suits at common law includes all legal proceedings, whatever may be the peculiar form they assume or object they have in view, which are not of equity or admiralty jurisdiction" (*Parsons* v. *Bedford*, 3 Pet. 434; *La Vengeance*, 3 Dall. 297; *Webster* v. *Reed*, 11 How. [U. S.] 437). (*c*) All the cases in this State which appear to hold that due process at law does not necessarily import a jury trial were all decided under the peculiar phraseology of sec. 2, art. 1, of the State Constitution, "that trial by jury in all cases in which it has heretofore been used, shall remain inviolate forever," which has been held to modify the meaning of "due process of law in particular cases." However correctly these cases may be decided, they do not apply to the United States Constitution, and "due process of law," in that Constitution, is not so limited by any such phraseology in that instrument, and the Fifteenth Amendment operates upon the States themselves. The case of 10 Barb. p. 35, cited by the district attorney, places the constitutionality of the act of 1844 under the peculiar phraseology of art. 1, sec. 2, above quoted, and the act, as we have seen, was not, at the time of that decision, in contravention of the same provision in the United States Constitu-

tion, as that was limited to laws of the United States, but the present article covers laws of the States. VIII. The recognizances are void because they were not taken in the manner provided by law. They require the accused to appear at the *present* instead of the next term of the court (*People* v. *Mack*, 1 Park. Cr. Rep. 567). (*a*) In the recognizances executed by Hickey, the offense for which the prisoner was indicted is declared to be conspiracy, and all the orders forfeiting the recognizances declare the crime to be conspiracy. This was only a misdemeanor by statute (2 R. S. p. 714, § 7, Edmund's ed.), the punishment for which is imprisonment in a county jail not exceeding one year (2 R. S. p. 719, § 40). (*b*) When the offense is not punishable by death or imprisonment in a State prison, the recognizance *must be* taken for the appearance of the accused at the *next* court having cognizance of the offense, to be held in the county where the offense is alleged to have been committed (2 R. S. p. 731, § 8). (*c*) Witnesses can only be recognized to appear at the *next* term of the court as well as the prisoner. It would be absurd to require the witnesses to appear at one term and the prisoner at another (2 R. S. p. 732, § 21). IX. The recognizances are also void as being taken *colore officii*. (*a*) Annexed to each of the recognizances in the *Walsh & O'Brien* case, there is what purports to be a consent that judgment might be entered on the same (if forfeited) in the manner provided by § 8 of the act of 1844 (*supra*). If this forms any part of the recognizance, the whole is void. (*b*) The Revised Statutes (2 R. S. p. 296, § 59) expressly provides " that no sheriff or other officer shall take any bond, obligation, or security, by virtue of his office, in any other case or manner than such as are provided by law. *Any such bond, obligation or security, taken otherwise than as herein directed, shall be void.*" (*c*) The district attorney had no more right to exact from the accused this stipulation as a condition of accepting the recognizances, or as part of the same, than he had to exact that a judgment should be then and there entered for the amount of the bonds. All he could lawfully do was to take such a recognizance as the law directed ; and if anything else was done, the law presumes it was done under *duress*, and

this renders the recognizance void as to the surety as well as the principal (*People* v. *Mack*, 1 Park. Cr. Rep. 567). X. The recognizances are also void because they were not filed immediately with the clerk of the county in which the indictments were found, as required by law (2 R. S: p. 753, § 58).

It sufficiently appears from the affidavits of the sureties and the orders of forfeiture, that the recognizances were not filed until the entry of judgment.

*Benjamin K. Phelps*, District Attorney, for the people, respondents.

In determining the regularity of the mode in which these judgments were entered, it will be of service to look at the practice in the matter of recognizances as it has prevailed from time to time in this State, and the course of legislation upon the subject. Under the laws of 1813 (1 R. L. of 1813, p. 400), the clerks of the various courts of record delivered to the Court of Exchequer, presided over by one of the puisne judges of the Supreme Court, on the first day of October term in each year, an account and estreat of all recognizances forfeited prior to the month of September in that year, and the Court of Exchequer *issued execution, founded on the return*, against the body, lands, etc., of the defendant. Thus upon the mere filing of the account of the recognizance in the Court of Exchequer, it became a judgment of that court, upon which execution issued, subject to the power of that court, in its discretion for good cause, to remit it. The Revised Statutes in 1830 altered this practice (2 R. S. 362, § 21, 2 Edm. ed. 374), and declared a recognizance to be only an evidence of debt, and that when forfeited it should be prosecuted for the people by the district attorney in an action of debt, and that when it was to be estreated, the estreat should be made by the entry of an order directing it to be prosecuted (2 R. S. 485, §§ 29, 30, 31). The power to remit the forfeiture, or discharge it upon terms, was given, with certain restrictions, to the Court of Common Pleas of the county in which the recognizance was taken (Id. 486, §§ 37, 38, 2 Edm. ed. 485). By an act of May 6, 1839 (4 Edm. Stat.

652), these provisions were especially made applicable to the courts of the city and county of New York, and apparently in order to prevent the district attorney prosecuting worthless recognizances for the sake of his costs, it was provided that he need not prosecute, unless by express order of the General Sessions or the Oyer and Terminer, and that he should not have costs except in suits prosecuted pursuant to such order. The law remained thus until 1844, when a new police system was formed for this city. It had then been found that the method of prosecution by action of debt entailed upon the people in this already great community, heavy burdens in the way of costs incurred in actions in which nothing was collected from the defendants, notwithstanding the restrictions of the act of 1839. To obviate this, the *old* method of summary judgments was restored, so far as related to recognizances taken in criminal cases in this city. The act of 1844 (L. 1844, c. 315, art. 4, § 8), " An act for the establishment and regulation of the police of the city of New York," provides : " All cognizances given to answer a charge preferred, or for good behavior, or to appear and testify in all cases cognizable before courts of criminal jurisdiction, on being forfeited, shall be filed by the district attorney, together with a certified copy of the order of the court forfeiting the same, in the office of the clerk of the said city and county, and thereupon the said clerk shall docket the same in the book kept by him for docketing of judgments, transcripts whereof are filed with him as such clerk, as if the same was a transcript of a judgment record for the amount of the penalty ; and the recognizance and the certified copy of the order forfeiting the recognizance shall be the judgment record ; such judgment shall in good faith be a lien on the real estate of the persons entering into such recognizance, from the time of filing said recognizance and copy order, and docketing the same as in this section directed ; an execution may be issued to collect the amount of said recognizance, in the same form as upon a judgment recovered in the Court of Common Pleas of said city and county in an action of debt, in favor of the people against the persons entering into such cognizance." At the next session of the Legislature (L. 1845, p. 250), it was enacted that these

judgments should be subject to the jurisdiction and control of the Court of Common Pleas for the city and county of New York, in the same manner as if such judgments had been actually docketed in that court. The Code of Procedure did not affect the methods of enforcing recognizances, being excluded from applying thereto by the terms of section 471. In 1855, all the provisions of the Code of Procedure were made to apply to all recognizances forfeited in any Court of General Sessions, or of Oyer and Terminer, in any of the counties in this State, and the second section of the act declared that "all laws or parts of laws or provisions of statutes in any wise conflicting with such applications of the provisions of the Code of Procedure to the said forfeited recognizances are hereby repealed" (L. 1855, c. 202, 4 Edm. Stat. 599). In 1861, the Legislature passed an act entitled "An act in relation to fines, recognizances, and forfeitures" (L. 1861, c. 333, 4 Edm. Stat. 653). The first section of this act provides that no fine imposed by any court for a criminal offense shall be remitted, except in compliance with certain conditions therein prescribed. The second section provides that all recognizances shall be filed in the office of the court at which the party is recognized to appear, within ten days after the same is taken. The third section declares, as follows: "The eighth section of the fourth article of an act entitled 'An act for the establishment and regulation of the police of the city of New York,' passed May seventh, eighteen hundred and forty-five, is hereby declared to be in force, and shall be applicable to the city and county of New York." The uninterrupted practice ever since that day has been precisely what it is in the cases at bar, and in strict accordance with the provisions of the law of 1844.

ROBINSON, J.—These are appeals from orders denying motions to vacate judgments entered upon forfeited recognizances in criminal cases, in pursuance of the provisions of L. 1844, c. 315, § 8, such judgments being made by L. 1845, c. 229, the subjects of the jurisdiction and control of this court, in the same manner as if actually docketed therein. This complete supervision of such judgments has been affirmed by the Supreme

Court, when an appellate court, in *The People* v. *Gildersleeve* (10 Barb. 44), and since in *The People* v. *Lott* (21 Barb. 130), and has since been constantly exercised.

Such a recognizance is an instrument peculiar to the common law, and is given as security for the appearance of persons charged with crimes. It consists of an acknowledgment of debt to the people in a sum fixed for bail, and is intended to be made a matter of record, whereon, when duly filed and enrolled, judgment and execution may be had (*People* v. *Kane*, 4 Den. 535, and cases cited; *The People* v. *Gildersleeve*, and *Same* v. *Lott*, *supra*).

Although of such high character, it partook of the nature of a bond and warrant of attorney in civil cases, and being the act of the party executing it, giving authority for such entry of final judgment thereon, it constituted due process of law, and infringed upon no right of trial by jury, which (as might be done in civil cases) was waived (*Murray's Lessees* v. *Hoboken Land and Imp. Co.* 18 How. [U. S.] 272; Const. 1846, art. 1, § 2; *Embury* v. *Connor*, 3 N. Y. 511; 2 Abb. Dig. [U. S.] 108, § 29, and cases cited). Previous to 1818, such proceeding was had in a court styled a Court of Exchequer (1 R. L. [1813] 400), whose powers were by act of 1818 (L. 1818, c. 283, § 8) transferred to the Court of Common Pleas of the several counties.

By the Revised Statutes (2 R. S. 362, § 21) such instruments were, as to the other counties, deposed from their high prerogative, as conferred by the common law, and made mere instruments of evidence of debt, to be prosecuted by the district attorney (2 R. S. 480, §§ 1, 29, 31); but this county was excepted from such general legislation, and the proceedings for the collection of fines and recognizances then in force were continued (2 R. S. 487, § 43). This was by *scire facias* for obtaining execution on the judgment, or an action of debt upon the recognizance.

By the subsequent act of 1839 (L. 1839, c. 343), the proceeding by action in debt, under the provisions of the Revised Statutes, was made applicable to this county, except that the district attorney was only to be entitled to costs when prosecuting by order of the court (L. 1839, c. 343, p. 317). The act of 1844

(L. 1844, c. 315, § 8), however, restored the proceedings on forfeited recognizances in this county to their common law office, with the right of entry of judgment thereon upon filing such recognizance with the clerk of the city and county of New York, with a certified copy of the order for its estreat, and also of execution, without *scire facias*, against the real and personal property of the persons entering into such cognizance (L. 1844, c. 315, p. 476). No alteration in the mode of giving effect to such instrument is claimed to have occurred until the amendment to section 471 of the Code of Procedure (which previously had wholly excepted proceedings on recognizances from its operation) by chapter 202 of the Laws of 1855 (L. 1855, p. 305), by which it was enacted as follows: " § 1. All the provisions of the Code of Procedure are hereby applied to all recognizances forfeited in any Court of General Sessions of the Peace of Oyer and Terminer in any of the counties of this State." By section 2 all laws or parts of laws conflicting with such application of the provisions of the Code of Procedure to such forfeited recognizances were repealed; and by section 3 it was provided that in no case should any fees or costs upon proceedings upon forfeited recognizances be chargeable upon this city or county by the officer prosecuting the same. A review of these several provisions of law does not relieve from doubt the question, whether the summary mode of enforcing such recognizances by filing the same and a certified copy of the order estreating it, and thereby effecting a judgment with immediate right of execution, which appertained to this county, in addition to the prosecution of the recognizance as a mere evidence of debt, was intended to be abrogated by the act of 1855. The Revised Statutes (2 R. S. 480, §§ 1, 31) had used imperative language that such recognizances forfeited in other counties *should* be sued, in an ordinary action of debt. The Code of 1849 (§ 471) excepted all former modes of proceeding on such instruments from its operation; the act of 1855 uses no such imperative terms, but may be construed as applicable to all suits brought by original process in any such actions to recover the debt due by the recognizance. Being but a remedial statute, it cannot, upon well recognized rules of construction, be

held, except by express terms, or by *necessary* implication from such as are used, as inhibiting or abolishing such other remedies or modes of procedure upon forfeited recognizances as were known to the common law, and it is rather to be held as affording a cumulative remedy. Justice Spencer, in *Wheaton* v. *Hibbard* (20 Johns. 293), says: "Now, the principle is, that where a party has a remedy at common law for a wrong, and a statute be passed giving a further remedy, *without a negative of the common law remedy*, express or necessarily implied, he may, notwithstanding the statute, have his action at common law." To the same effect are *Almy* v. *Harris* (5 Johns. 175); *Wetmore* v. *Tracy* (14 Wend. 255); *Stafford* v. *Ingersol* (3 Hill, 38); *Turnpike Co.* v. *The People* (9 Barb. 161).

It is a fundamental rule of construction that all acts altering or impairing the common law rights of parties are to be strictly construed, especially such as abridge the rights of the people to any remedy to be afforded them in their own courts. I am therefore of the opinion that a construction of the provisions of the act of 1855 found complete solution or satisfaction in their application to all suits upon forfeited recognizances to be brought, as well on those estreated in this as in the other counties of the State, as a substitute for the common law action of debt; and that while by this enactment such recognizances *when sued upon* were to be prosecuted in the mode prescribed by the Code, the common law mode of procedure upon forfeited recognizances by direct enrolment and entry of judgment thereon, by virtue of such quality attached to them at common law, was not, as respects this county, abrogated or interfered with. But were this otherwise, the provisions of the subsequent act of 1861 (L. 1861, c. 333), declaring that the before mentioned section 8 of the act of 1844 was still in force and should be applicable to the city and county of New York, if necessarily an act of original legislation, and void as one of judicial legislation, was not obnoxious to any constitutional objection. It is claimed it was in violation of the provisions of article 3, section 16, of the Constitution, declaring that "no private or local bill shall embrace more than one subject, and that shall be expressed in the title." The title of this is, "An act in relation to fines, recognizances

and forfeitures; " and the first section prescribes and limits the mode for the remission or reduction of fines; the second requires the filing of every recognizance, with the complaint in question, the affidavits and other papers upon which it is founded, within ten days after it is taken; and the third section is to the effect above stated.

I am unable to discover in this act of 1861 any evasion of the provisions of the Constitution. The title does not express any local subject, but has reference to the general administration of justice relating to the matter of fines, recognizances and forfeitures, in which all persons are interested, and affecting all coming within the range of the operation of the act. It has general application upon those subjects to the whole State, and the third section, applicable to this county, is but the special expression of the will of the Legislature, within the general subject embraced in the title. The exclusion of one or more counties from the operation of the general act, or the making of particular provisions on a general subject, in reference to one or more counties or localities, is clearly within the legislative powers, and not obnoxious to constitutional objection (*Matter of Walker*, 1 Edm. 574; *Conner* v. *The Mayor &c. of New York*, 5 N. Y. 286; *Williams* v. *The People*, 24 Ib. 405; *Matter of Mayor*, 50 N. Y. 504).

In this view of the law applicable to the cases under examination, the clause contained in the recognizances in two of them, consenting to the entry of judgment thereon, in the manner provided in the act of 1844, was but an expression as to the legal effect of the instrument, and was mere surplusage. The maxim, "*utile per inutile non vitiatur*," applies (*People* v. *Millis*, 5 Barb. 511).

In my opinion, the several orders in these cases should be affirmed, with costs.

LARREMORE and VAN BRUNT, JJ., concurred.

Orders affirmed.